Brown et al., Appellants, *v.* Commonwealth.

Argued November 13, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

reargument refused June 27, 1973.

*Joel M. Lieberman,* for appellants.

*Burton D. Morris,* Deputy Attorney General, with him *Edward J. Weintraub,* Deputy Attorney General, and *J. Shane Creamer,* Attorney General, for Commonwealth, appellee.

OPINION BY MR. CHIEF JUTICE JONES, May 23, 1973:

On August 24, 1969, appellant, Donna Brown, a minor, while a guest at a Pennsylvania National Guard outing in Meadowbrook, sustained injuries when a National Guard jeep in which she was riding as a passenger was involved in an accident occasioned by the negligence of the operator, a Guardsman.

By her guardian, appellant brought a trespass action seeking damages for her injuries and the expense incurred for her treatment.[1] The Commonwealth, by demurrer, interposed the doctrine of sovereign immunity. The Commonwealth Court sustained the Commonwealth's preliminary objections and dismissed appellants' complaint.[2] An appeal was taken from dismissal of the complaint. Act of July 31, 1970, P. L. 673, §203, 17 P.S. §211.203.

The questions raised by this appeal reduce themselves to a frontal assault upon the doctrine of sovereign immunity. The subparts of this challenge question (1) whether sovereign immunity *should* be abolished, (2) whether it *can* be abolished and (3) whether it applies at all under the factual circumstances of this case. The desirability of limiting our decisions to the narrowest of issues necessitates the leading consideration of the question whether sovereign immunity applies to these factual circumstances.

---

[1] In this action in trespass the appellants named only the Commonwealth. They did not name the Guardsman as a party defendant.

[2] Argument on the preliminary objections was heard by a three-judge panel of the Commonwealth Court including Judges JAMES C. CRUMLISH, JR., HARRY A. KRAMER and THEODORE O. ROGERS.

Appellants argue that because the Commonwealth has obtained liability insurance, which may provide compensation for the damagees resulting from this incident, the doctrine of sovereign immunity should not apply. *Cf. Falco v. Pados,* 444 Pa. 372, 282 A. 2d 351 (1971) ; *Flagiello v. Pennsylvania Hospital,* 417 Pa. 486, 208 A. 2d 193 (1965).

The Commonwealth's Department of Property and Supplies obtained automobile liability insurance, protective of the officers, enlisted men and employees of the National Guard, in conformity with the Administrative Code of 1929, Act of April 9, 1929, P. L. 177, §2404, *as amended,* 71 P.S. 634.[3]

The Commonwealth concedes that the Administrative Code provision, as implemented by the purchase of insurance by the Department of Property and Supplies, represents an avenue of compensation open to appellants, an avenue which they have failed to utilize. Appellants urge, by analogy to this Court's decisions in *Flagiello* and *Falco,*[4] that the existence of insurance

---

[3] "The Department of Property and Supplies shall have the power, and its duty shall be:

. . .

(b) To procure automobile liability insurance, covering vehicles owned by the Commonwealth. . . .

. . .

"All automobile liability insurance procured by the Department of Property and Supplies hereunder shall protect both the Commonwealth and the State officer or employe operating the vehicle, or State officers and employes and officers and enlisted men of the Pennsylvania National Guard . . . against claims for damages for injury to person or property. . . ."

[4] *Flagiello v. Pennsylvania Hospital,* 417 Pa. 486, 208 A. 2d 193 (1965), relying to some extent upon the availability of liability insurance to the charitable institution, disallowed the defendant hospital's assertion of charitable immunity. *Falco v. Pados,* 444 Pa. 372, 282 A. 2d 351 (1971), abolished parental immunity by permitting the unemancipated child to recover against the insured parent.

coverage obviates the need for "outmoded" law. We reject the notion that the existence of statutorily mandated public liability insurance evidences a legislative intent to reject sovereign immunity in this context.

Article I, Section 11 of the Pennsylvania Constitution provides that suits may be brought against the Commonwealth "in such cases as the Legislature may by law direct." While insurance coverage is provided, and the Commonwealth concedes the existence of a system of compensation in this factual setting,[5] we cannot justify a holding that the Legislature, by enacting Section 2404 of the Administrative Code, intended to create a sovereign immunity exception as envisioned by Article I, Section 11 of the Pennsylvania Constitution. Section 2404 does not permit the injured or damaged party to sue the Commonwealth. We find no legislative exception to sovereign immunity in this case. We will not create one by judicial edict.

Although appellants frame the separate issues of whether sovereign immunity can and should be abolished, these considerations are inextricably woven into the real question here involved: may we strike down a policy embodied by the Commonwealth's Constitution absent some compelling showing that Article I, Section 11 is in conflict with the Federal Constitution?

Appellants urge that because sovereign immunity was judicially created, and improvidently so, this Court

---

[5] It is appellants' position that an attempt to recover against the Commonwealth's policy was thwarted by the Guard Insurance Adjuster's failure to cooperate in the claims process, and that the only alternative was to initiate this action so that discovery might disclose the identity of the negligent Guardsman. The Commonwealth claims that the appellants have not exercised due diligence in attempting to discover the identity of the Guardsman and that the Guard will disclose his identity on request.

As this appeal concerns the propriety of the Commonwealth Court's order sustaining the demurrer to appellants' complaint the alleged intransigence of the Guard's Adjuster is irrelevant.

should hasten its judicial demise. Article I, Section 11 of our Constitution compels the conclusion, however, that this Commonwealth's immunity is constitutionally, not judicially, mandated: *"Suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct."* (Emphasis added) No other conclusion is possible than that it falls to the Legislature to determine the circumstances under which immunity may be waived.[6] *Commonwealth v. Orsatti,* 448 Pa. 72, 292 A. 2d 313 (1972); *Conrad v. Commonwealth Department of Highways,* 441 Pa. 530, 272 A. 2d 470 (1971); *Meagher v. Commonwealth,* 439 Pa. 532, 266 A. 2d 684 (1970); *Bannard v. New York State Natural Gas Corp.,* 404 Pa. 269, 172 A. 2d 306 (1961); *Stouffer v. Morrison,* 400 Pa. 497, 162 A. 2d 378 (1960); *Commonwealth v. Berks County,* 364 Pa. 447, 72 A. 2d 129 (1950).

Appellants also argue that Article I, Section 11 of the Pennsylvania Constitution is repugnant to the Due Process and Equal Protection Clauses of the Federal Constitution. The basis of appellants' constitutional argument is that Article I, Section 11 is uncertain by its own terms, and so void for vagueness, and that it confers upon the Legislature the unfettered discretion to arbitrarily formulate exceptions to the doctrine of sovereign immunity.

The vagueness standard is inapplicable in this context. Article I, Section 11 establishes a standardless prerogative for the Legislature to consent to suit against the Commonwealth. The due process vagueness standard applies to void *legislation* which limits the ability of those to whom the statute is applied to understand that which is prohibited or mandated. Since Article

---

[6] We reiterate our urging of the need for comprehensive legislative action permissible under Article I, Section 11. *Stouffer v. Morrison,* 400 Pa. 497, 162 A. 2d 378 (1960) (concurring opinion by the late Mr. Justice COHEN joined by this writer).

I, Section 11 provides only a framework within which the Legislature may operate, the void-for-vagueness argument is inapposite here.

Similarly, because Article I, Section 11 is not self-executing, and because no classification is possible without legislative implementation, this constitutional provision cannot be considered discriminatory for equal protection purposes.

Whether the doctrine of sovereign immunity should be modified in this Commonwealth is a legislative question. We could not base a contrary holding upon our impatience with the Legislature's failure to act as speedily and comprehensively as we believe it should.

Order affirmed. Each party to pay own costs.

CONCURRING OPINION BY MR. JUSTICE POMEROY:

I join in the opinion of the Court, but deem it appropriate to add this statement of explanation.

As will be clear from my dissenting opinion in *Laughner v. Allegheny County*, 436 Pa. 572, 576, 261 A. 2d 607 (1970), it is my considered belief that "neither the early conceptualistic theories nor the more recently articulated policy arguments are adequate to justify retention of the [governmental] immunity doctrine in its present broad scope." *Id.* at 579. I there advanced the view that this unsatisfactory rule, developed as it was by the common law, was a fit subject for abrogation by judicial action: ". . . the judiciary's traditional responsibility for adapting and improving the doctrines of the common law, particularly in the area of torts, coupled with its original role in the promulgation of the immunity rule, indicate that the judiciary is a natural and proper agent of change in the present case, unless there are countervailing considerations of such strength as to demonstrate the unwisdom of such a conclusion." *Id.* at 582. The opinion in *Laughner* concluded that neither (1) the argument

that the issue fell peculiarly within the institutional competence of the legislature nor (2) the closely related argument that judicial reform of the doctrine would upset the proper relationship between the judiciary and the legislative branches served to prevent reform of the doctrine from being undertaken by this Court. These views I continue to hold, and I therefore note with satisfaction the Court's decision in *Ayala v. Philadelphia Board of Public Education,* 453 Pa. 584, 305 A. 2d 877 (1973) decided this day, in which the doctrine of governmental immunity is abolished in Pennsylvania.

The point of difference between *Laughner, Ayala* and similar cases involving immunity of units of local government (governmental immunity) on the one hand, and the case at bar and our recent decision in *Biello v. Pennsylvania Liquor Control Board,* 454 Pa. 179, 301 A. 2d 849 (1973), involving immunity of the Commonwealth and its agencies (sovereign immunity) on the other hand, is that in the former class of cases there is no constitutional basis for the immunity, while in the latter there is. Thus while one type of immunity may be as distasteful and inequitable as the other, the remedy by judicial decision which the majority of the Court properly finds to be available in the one situation is not in my opinion available in the other.

The Constitution of Pennsylvania provides that "[s]uits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct." Pa. Const. art. I, §11. I am obliged to agree with the Chief Justice that because of this provision "no other conclusion is possible than that it falls to the Legislature to determine the circumstances under which immunity must be waived." Opinion of the Court, ante at 571. I also agree with the statement in the opinion of Mr. Justice O'BRIEN in *Biello,* supra, that "this [constitutional] language has

consistently been interpreted to mean that no suit may be maintained against the state in tort until the legislature specifically has provided for such an action".[1] By the same token, I cannot agree with my brother NIX, dissenting in *Biello* and repeating that dissent here, that the constitutional provision above quoted does not place a limitation on the power of the judiciary to act in the premises. When by their Constitution the people of Pennsylvania have expressly delegated to the legislative branch of government the task of determining in what manner and in what court and in what cases the Commonwealth may be subjected to suit (and, implicity, to the liability that may result therefrom), I fail to see how this Court can properly hold that it has a right to preempt this legislative function. A proposition that had its ancient origin in the common law of England and colonial America was elevated to constitutional status in Pennsylvania as long ago as 1790. To ignore this development would be to warp

---

[1] I would add that this constitutional prohibition of suits against the Commonwealth is not limited to the field of torts, nor is it in my view dependent upon whether or not the activity of the Commonwealth giving rise to the claim is "governmental" or "proprietary" in nature. The Constitution speaks in general terms and the delegation to the legislature of the right to waive the immunity by consent to suit is not restricted to so-called governmental activities. The cases cited in *Biello* for the proposition that this distinction has been implicit in our application of the rule of sovereign immunity are not to the contrary. In those cases. the word "governmental" was employed as one of the indicators that the agency being sued was actually the Commonwealth; it was not used in contradistinction to the idea of "proprietary".

Moreover, "[t]he delineation of a rational and consistent line between governmental and proprietary activities has eluded the courts and commentators, and the line between such activities is likely to grow still more elusive as the government increasingly performs services only recently left to the private sector." *Laughner v. Allegheny County*, 436 Pa. 572, 582, 261 A. 2d 607 (1970) (POMEROY, J., dissenting) (footnote omitted).

the plain meaning of the Constitution to suit societal ends which now, one hundred and eighty-three years later, the entire membership of this Court thinks are much to be desired. We may lament the legislative failure to correct before the present date an inequitable situation, but impatience should not cause us to upset the balance of power in our tripartite system of government by making the correction ourselves. To do so would be judicial action of a quite different order from that which I thought proper in *Laughner*, supra, and which the Court is today taking in *Ayala*.

It is true, as my brother ROBERTS observes in his separate dissent herein, that twenty-one jurisdictions (20 states and the District of Columbia) have now in general, subject to normal exceptions, done away with the doctrine of sovereign immunity (i.e., the immunity of states as distinguished from that of political subdivisions). It must be emphasized, however, that of the twenty states taking this action, twelve have done so either by constitutional provision or by statute. Seven states have, to be sure, accomplished this end by judicial decision, but there is no indication that this has been done in the teeth of a constitutional provision such as we have in Pennsylvania recognizing the immunity of the state from suit and vesting in the legislature the power to consent to suit.[2] As the commentary to the proposed new section of the Restatement (Second) of Torts recognizes, "[i]n many states the rule that the state cannot be sued without its consent is written into the constitution . . . *Consent to suit against the state or its agencies is normally given by express legislation.* In many states this is expressly or impliedly set forth in the State Constitution. . . ." American Law Institute, Restatement (Second) of Torts

---

[2] See *Krause v. Ohio*, 31 Ohio St. 2d 132, 285 N.E. 2d 736 (1972). Cf. *Muskopf v. Corning Hospital District*, 55 Cal. 2d 211, 359 P. 2d 457 (1961).

§895B, at 23, 24 (Comment a) (Tent. Draft No. 19, Mar. 30, 1973) (emphasis added).[3] Thus in the area of *sovereign* immunity, as distinguished from *governmental* immunity, reliance on the abolition by this Court of certain other now obsolete doctrines of tort law is in my view quite misplaced. See, e.g., *Falco v. Pados*, 444 Pa. 372, 282 A. 2d 351 (1971); *Flagiello v. Pennsylvania Hospital*, 417 Pa. 486, 208 A. 2d 193 (1965).

Finally, it is worth noting that the General Assembly of Pennsylvania from as long ago as 1811 has known how in non-tort actions "to enable claimants who ordinarily would have been barred by the prerogative of sovereign immunity against suit, to have a method of redress against the Commonwealth". *Lowry v. Commonwealth*, 365 Pa. 474, 478, 76 A. 2d 363 (1950). See also *Merchants Warehouse Co. v. Gelder*, 349 Pa. 1, 36 A. 2d 444 (1944). That the legislature continues to be aware of the problem is clearly demonstrated by the careful caveat in the recent Appellate Court Jurisdiction Act, wherein it was stipulated that the placing in the Commonwealth Court of jurisdiction of certain actions against the Commonwealth "shall not be construed as a waiver by the Commonwealth of immunity to suit". Act of July 31, 1970, P. L. 673, §401(c), 17 P.S. §211.401. This renewed recognition that the abrogation or modification of sovereign immunity in Penn-

---

[3] Another comment to the same proposed new section of the Restatement thus summarizes the present situation: "Thus, it now has become clear that the tort immunity of the state and its agencies can be abrogated, or severely limited, by either legislative or judicial action. On the basis of this action by courts and legislatures in abrogating the general tort immunity, the modern rule is that the state and its agencies are subject to liability in tort. This liability is subject, of course, to any legislative restrictions which may be imposed upon it, and also to certain recognized exceptions at common law." Restatement (Second) of Torts §895B (Comment b) (Tent. Draft No. 19, Mar. 30, 1973).

sylvania is constitutionally vested in the legislature does not, of course, prevent our continued urging upon the General Assembly of the need to recognize the inequity which is implicit in a case such as this one, and to take appropriate remedial action, as have the legislative bodies of so many of our sister states.

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

I join in Mr. Justice NIX's dissent for the reasons stated therein as well as for the reasons set out in my dissenting opinion in *Thomas v. Baird,* 433 Pa. 482, 485, 252 A. 2d 653, 655 (1969).

As Mr. Justice NIX recently stated in his dissenting opinion (in which I joined) in *Biello v. Pennsylvania Liquor Control Board,* 454 Pa. 179, 187, 301 A. 2d 849, 854 (1973) : "[T]he language of the Constitution [Article I, Section 11] itself fails to provide any basis for the majority's assumption that in Pennsylvania this immunity [sovereign immunity] is constitutionally mandated. . . . To the contrary, Article I, Section 11 merely sets forth the mechanism by which the state may waive this power [immunity from suit]. . . . *The Constitution is therefore neutral—it neither requires nor prohibits sovereign immunity. It merely provides that the presence or absence of sovereign immunity shall be decided in a non-constitutional manner."* (Emphasis added) (Footnote omitted).

The majority today, however, reasserts that "Article I, Section 11 of our Constitution compels the conclusion . . . that this Commonwealth's immunity is constitutionally, not judicially, mandated . . ." and that the question of whether ". . . sovereign immunity should be modified in this Commonwealth is a legislative question." Despite the majority's absolute pronouncement that any modification in the doctrine of sovereign immunity must originate with the Legislature, this Court, only recently, in *Biello,* supra, "modified" the doctrine

by holding, *without specific legislative direction,* that the Commonwealth is *not* immune from suit where it engages in performing "proprietary functions." Through judicial action, this Court wisely narrowed the heretofore unlimited scope of state immunity. However, *Biello* obviously negates the majority's present assertion that sovereign immunity is constitutionally ordained and alterable only by the Legislature.

Having moved in the proper direction in *Biello,* there is no rational reason why the majority could not and should not now judicially abrogate the doctrine of sovereign immunity in toto, or at the least, refuse to apply it, where, as here, an instrumentality of the Commonwealth has obtained liability insurance (at the command of the Legislature) to compensate those injured through the fault of its agents.*

Twenty-one states, eight through judicial action, have now abolished the concept of state immunity. Nine others have partially abrogated the doctrine, and *eight others have abolished it where (as here) the state (or its instrumentalities) has obtained insurance.* American Law Institute, Restatement of Law Second, Torts, p. 21 (Tentative Draft 19, March 30, 1973). Despite this overwhelming rejection of sovereign immunity, the majority continues to adhere to age old precedent which has long ago lost any justification in twentieth century society. See *Biello,* supra (dissenting opinion). "[W]hen precedent is examined in the light of modern reality and it is evident that the reason for the precedent no longer exists, the abandonment of the precedent is not a destruction of stare decisis but rather a fulfillment of its purpose. Stare decisis is not a confining phenomenon but rather a principle of law. And when the application of this principle will

---

* Cf. *Falco v. Pados,* 444 Pa. 372, 282 A. 2d 351 (1971); *Flagiello v. Pennsylvania Hospital,* 417 Pa. 486, 208 A. 2d 193 (1965).

not result in justice, it is evident that the doctrine is not properly applicable." *Smith v. State,* 93 Idaho 795, 801, 473 P. 2d 937, 943 (1970). See also *Niederman v. Brodsky,* 436 Pa. 401, 261 A. 2d 84 (1970) (rejects the "impact" rule); *Flagiello v. Pennsylvania Hospital,* 417 Pa. 486, 208 A. 2d 193 (1965) (rejects the doctrine of charitable immunity); *Griffith v. United Air Lines, Inc.,* 416 Pa. 1, 203 A. 2d 796 (1964) (rejects "place of wrong" test as the choice of law doctrine in Pennsylvania). It is all too clear that the majority's application of sovereign immunity here has created an unjust result.

I dissent.

Mr. Justice NIX and Mr. Justice MANDERINO join in this dissenting opinion.

DISSENTING OPINION BY MR. JUSTICE NIX:

I am still of the opinion expressed in my dissent in *Biello v. Pennsylvania Liquor Control Board,* 454 Pa. 179, 301 A. 2d 849 (1973).

The result reached by the majority in this case is particularly inexplicable in view of the statutory requirement that the State carry insurance coverage,[1] and the fact that the State maintained insurance covering this claim.

Mr. Justice ROBERTS and Mr. Justice MANDERINO join in this dissenting opinion.

---

[1] "The Department of Property and Supplies shall have the power, and its duty shall be:

(b) To procure automobile liability insurance, covering vehicles owned by the Commonwealth. . . .

"All automobile liability insurance procured by the Department of Property and Supplies hereunder shall protect both the Commonwealth and the State officer or employe operating the vehicle, or State officers and employes and officers and enlisted men of the Pennsylvania National Guard . . . against claims for damages for injury to person or property. . . ." *Administrative Code of 1929, Act of April 9, 1929, P. L. 177, §2404, as amended, 71 P.S. 634.*

580

I dissent from the unwarranted conclusion that the doctrine of sovereign immunity is not a judicially created doctrine. I dissent also from the Court's refusal to strike down the judicially created doctrine, which does not have and *never had* any legitimate roots in constitutional government.

In *Biello v. Pennsylvania Liquor Control Board,* 454 Pa. 179, 301 A. 2d 849 (1973), the dissenting opinion of my brother, Mr. Justice NIX, cogently pointed out that the doctrine of soverign immunity is ". . . an obsolete vestige of a distant past. . . ." It is that and more in Pennsylvania. It is a doctrine which has no support in the *written constitution of Pennsylvania*—and never had.

The majority concludes that past decisions of this Court have settled the question. They have not. Each of the past decisions of this Court have *pronounced* the existence of the doctrine of sovereign immunity and then cited a previous case in support of the *pronouncement*. One would expect that a search through the precedents, containing the *pronouncement* followed by a prior citation, would eventually lead to the origin of the judicial chain and a discovery that the chain is solidly anchored in principles worthy of government established by a *written constitution*. Such a discovery cannot be found in the past decisions of this Court. Those decisions have assumed that the *sovereign is the state* and that the state possesses inherent and inalienable rights—the exact principles of government guillotined and buried in the human revolutions that gave birth to *written constitutions*.

The majority quotes a sentence from Section 11 of Article 1 of the Pennsylvania Constitution and finds support for its position in that sentence. It does not, however, support the majority's position.

Article 1 of the Pennsylvania Constitution is titled the *Declaration of Rights.* The entire Article is concerned with establishing the principle that the people are the sovereign—not the state. There are twenty-six sections in Article 1 and every single section is concerned with the rights of the people—not the state. To isolate one sentence out of the twenty-six sections in the *Declaration of Rights* and say that it should be interpreted to protect the rights of the state—not the people—is ludicrous and violates all reasonable principles of construing written language in proper context. Article 1, the *Declaration of Rights,* opens by stating that the purpose of the *Declaration* is "that the general, great and essential principles of liberty and free government may be recognized and unalterably established." Nothing is said about protecting the state. The complete *Declaration*—its language, tone and thrust—concerns the protection of the people—not the state.

The *Declaration* speaks of the inherent and indefeasible *rights* of people—not the state. It states that all power *is inherent in the people,* and all free governments are founded *on their authority*—not that power is inherent in the state or that government is founded on the authority of a divinity or an unwritten floating concept in a judge's mind. The *Declaration* states that no one *can be deprived of his life, liberty, or property, unless by the judgment of his peers or the law of the land*—not that the state's life, liberty or property is protected. It also says that *private property* shall not be taken *without just compensation being first made or secured*—and there is no exception for any kind of property. The people are protected from *any grant of special privileges or immunities* by the state. The people are given the right to the *redress of grievances*—no exception for tort claims or any other claim. The

*Declaration* ends by protecting the people in the enjoyment of all *civil rights*.

The purpose of the *Declaration of Rights* in the Pennsylvania Constitution, all of its Sections, is to guarantee and make absolute the principle that the people are supreme—sovereign—and possess the inalienable rights which were possessed by the state prior to government under a *written constitution*. The majority focuses on three words, out of context, which they conclude are exceptions to the entire purpose and thrust of the *Declaration of Rights*. The three words relied on by the majority are not only read out of context of the *Declaration of Rights* for the people in which they appear, they are also read out of the context of Section 11 of the *Declaration of Rights* and out of the context of the sentence in in which the words appear.

Section 11 has two sentences and they must be read together. The entire Section 11 states: "All courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law, and right and justice administered without sale, denial or delay. Suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct."

The first sentence of Section 11 is unequivocal. It protects everyone—without exception—for all injuries —without exception. It specifically speaks of injuries to *lands, goods, person or reputation*. The first sentence says that everyone *shall have remedy* by due course of law—it does not say that sometimes there is a remedy and sometimes not. The sentence states that right and justice shall be administered *without . . . denial*—it does not say justice can be denied sometimes and sometimes not. The first sentence of Section 11 must be read before proceeding to sentence two, and that

first sentence could not have been written in more absolute terms even by one possessing divine rights. Can we possibly destroy the absolutely plain meaning of sentence one by an interpretation of sentence two, which requires a reach outside the people's *written constitution*. The *written constitution* contains no mention of immunity for the state—or inherent rights of the state—or inalienable rights of the state—or indefeasible rights of the state. It is thus necessary for the majority to begin its interpretation of sentence two by reaching *outside the written constitution*. Just where that reach extends, we are not told.

If sentence two of Section 11 can be reasonably interpreted without destroying the clear meaning of sentence one or doing violence to the purpose of the entire Article in which the Section appears, we are bound in the name of reason to so interpret sentence two of Section 11. The only reasonable meaning of sentence two, in context, must be that it gives the legislature the right to implement procedurally the substantive rights granted so absolutely in the first sentence of Section 11.

The majority focuses on the words "in such cases" which appear in the second sentence of Section 11. Those words, however, are part of a phrase appearing in the sentence. The full phrase is "in such manner, in such courts and in such cases. . . ." If the focus is on the complete phrase, or the complete sentence, or the complete Section, or the complete Article, the majority's interpretation cannot stand. The majority's interpretation depends upon a focus centered on three words—ignoring the phrase in which they appear—ignoring the sentence in which they appear—ignoring the Section in which they appear—and ignoring the Article in which they appear, all of which is called the *Declaration of Rights* for the protection of the people—who are the sovereign.

In addition, the majority's focus on the three words requires a second focus of the judicial eyesight, *outside the written constitution* for the discovery of a doctrine known as sovereign immunity originating in the days when authority had to be delegated to people rather than delegated to the state; and when the state was the sovereign rather than the people.

There is no sovereign in constitutional government—except the people. How can the state have any immunity if the people didn't authorize it? How could the people have authorized it if it is not in the *written constitution*? How can the *written constitution* be interpreted to contain something which it clearly does not? How can three words in the people's constitution be used to breathe life into a corpse which we buried centuries ago without shedding tears?

In the name of three misinterpreted words, we cannot allow special privileges by which some citizens injured by government shall have a remedy and not be denied right and justice (first sentence of Section 11), while other citizens are denied any remedy and are denied right and justice.

The concept that the state is sovereign has been dead for centuries. The corpse was not given any immunity by the people in the Pennsylvania Constitution. This Court should finally recognize the realities of history.

The order of the lower court should be reversed.