351 A.2d 247

Joseph M. TARANTINO, Administrator of the Estate of Janice A. Tarantino, Deceased, Appellant,

v.

ALLENTOWN STATE HOSPITAL et al.

Supreme Court of Pennsylvania.

Argued Nov. 17, 1975 (J–424).

Decided Jan. 29, 1976.

Rodney D. Henry, Quakertown, for appellant.

Allen C. Warshaw, Deputy Atty. Gen., for appellee.

Before EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION

PER CURIAM:

The Court being equally divided, the Order of the Commonwealth Court is affirmed.

JONES, C. J., took no part in the consideration or decision of this case.

O'BRIEN, J., filed an Opinion in Support of Affirmance in which EAGEN and POMEROY, JJ., joined.

ROBERTS, J., filed an Opinion in Support of Reversal in which NIX and MANDERINO, JJ., joined.

O'BRIEN, Justice (Opinion in Support of Affirmance).

Order of the Commonwealth Court affirmed.

See *Brown v. Commonwealth,* 453 Pa. 566, 305 A.2d 868 (1973); *Poklemba v. Shamokin State General Hospital,* 21 Pa.Cmwlth 301, 344 A.2d 732 (1975). See also *Biello v. Pa. Liquor Control Bd.,* 454 Pa. 179, 301 A.2d 849 (1973) (opinion announcing the decision of the Court).

EAGEN and POMEROY, JJ., join in this opinion.

ROBERTS, Justice (Opinion in Support of Reversal).

On January 19, 1973, Janice Tarantino was involuntarily committed to Allentown State Hospital. Appellants allege that even though bruises were visible on her head and body, Janice Tarantino was not examined by physicians during the first four days of her confinement. In March she died. It is alleged that her death was caused by the negligence of the Commonwealth and its agents.

This wrongful death and survival action ensued. Preliminary objections raising the defense of sovereign immunity were sustained. Today, members of this Court allow that order to stand. As on every other occasion when this Court has reaffirmed the doctrine of sovereign immunity, depriving citizens of the Commonwealth of their day in Court, I disagree. See, e. g., *Zerby v. Department of Transportation,* 464 Pa. 421, 423, 346 A.2d 914, 915 (1975) (dissenting opinion of Roberts, J.); *Williams v. Commonwealth,* 460 Pa. 581, 582, 333 A.2d 924, (1975) (dissenting opinion of Roberts, J., joined by Nix, J.); *McCoy v. Commonwealth Liquor Control Board,* 457 Pa. 513, 514, 326 A.2d 396, 397 (1974) (dis-

senting opinion of Roberts, J., joined by Nix and Manderino, JJ.); *Sweigard v. Pennsylvania Department of Transportation*, 454 Pa. 32, 35, 309 A.2d 374, 376 (1973) (dissenting opinion of Roberts, J., joined by Nix and Manderino, JJ.); *Brown v. Commonwealth*, 453 Pa. 566, 577, 305 A.2d 868, 871 (1973) (dissenting opinion of Roberts, J., joined by Nix and Manderino, JJ.); *Biello v. Pennsylvania Liquor Control Board*, 454 Pa. 179, 187, 301 A.2d 849, 853 (1973) (dissenting opinion of Nix, J., joined by Roberts, J.); see generally *Specter v. Commonwealth*, 462 Pa. 474, 494, 341 A.2d 481, 491 (1975) (dissenting opinion of Roberts, J., joined by Nix, J.); *Ayala v. Philadelphia Board of Public Education*, 453 Pa. 584, 305 A.2d 877 (1973). See also *Brown v. Commonwealth*, supra, 453 Pa. at 580, 305 A.2d at 875 (dissenting opinion of Manderino, J.).

Mr. Justice Nix, Mr. Justice Manderino and I have repeatedly argued in dissent that the language of article I section 11 of the Pennsylvania Constitution does not support the conclusion by other members of the Court that sovereign immunity exists unless legislatively abolished. The reason given for continued adherence to that interpretation of the constitution is that sovereign immunity, because of its historical roots, is somehow the touchstone in interpreting that section. The passage of time has shown, however, that the doctrine is no longer based in reason or necessity. Once this historical basis is rejected, such interpretation of that section is indefensible.

Nor is it enough to say that stare decisis forces such a result. Stare decisis does not shackle us to the past. It is only a principle which admonishes us to be as consistent as justice will allow. When the passage of time makes consistency the perpetrator of injustice, stare decisis yields to the greater duty of the courts to serve the present needs of society. Moreover, it is of no moment that the desired break with the past involves an interpre-

tation of a constitutional section. Justice Cardozo aptly stated:

"I think that when a rule, after it has been duly tested by experience, has been found to be inconsistent with the sense of justice or with the social welfare, there should be less hesitation in frank avowal and full abandonment. We have had to do this sometimes in the field of constitutional law. Perhaps we should do so oftener in fields of private law where considerations of social utility are not so aggressive and insistent. There should be greater readiness to abandon an untenable position when the rule to be discarded may not reasonably be supposed to have determined the conduct of the litigants, and particularly when in its origin it was the product of institutions or conditions which have gained a new significance or development with the progress of the years."

He continued:

"In such circumstances, the words of Wheeler, J., in *Dwy v. Connecticut Co.*, 89 Conn. 74, 99 [92 A. 883], express the tone and temper in which problems should be met: 'That court best serves the law which recognizes that the rules of law which grew up in a remote generation may, in the fullness of experience, be found to serve another generation badly, and which discards the old rule when it finds that another rule of law represents what should be according to the established and settled judgment of society, and no considerable property rights have become vested in reliance upon the old rule. It is thus great writers upon the common law have discovered the source and method of its growth, and in its growth found its health and life. It is not and it should not be stationary. Change of this character should not left to the legislature.' If judges have woefully misinterpreted the mores of their day, or if the mores of their day are no longer those of

ours, they ought not to tie, in helpless submission, the hands of their successors."

Cardozo, The Nature of the Judicial Process (1921) at 149–52.

In again voicing opposition to this doctrine, I remind the Court that the Commonwealth has insurance coverage for the type of claim presented here. In his Veto of House Bill No. 274, July 24, 1970, then Governor Shafer stated:

> "I do not disagree with the general proposition that the Commonwealth should be liable to suit in cases involving negligence of its employees.
>
> . . . . . . . .
>
> "The Commonwealth has purchased public liability insurance for the protection of injured persons. That insurance covers employe liability in a long list of state activities. . . . This insurance includes coverage against property damage as well as personal injuries."

A compilation by the American Law Institute showed that, as of 1973, eight states considered sovereign immunity inapplicable in cases where there was insurance coverage. See Restatement, Second, of Torts, Tentative Draft No. 19, at 21 (1973). At least to the extent that there is insurance coverage the Commonwealth should be found to have waived sovereign immunity.

I note also that New Mexico and Minnesota have recently joined the list of those states which have rejected the doctrine of sovereign immunity. *Hicks v. New Mexico,* 88 N.M. 588, 544 P.2d 1153 (Decided Sept. 26, 1975); *Nieting v. Blondell,* 235 N.W.2d 597 (Minn., decided October 31, 1975); see also 18 A.T.L.A. News Letter, No. 10,450 (Dec. 1975). Thus, at least 24 states have now completely abandoned the doctrine. See A.L.I. list, supra. I regret that Pennsylvania is not among them.

NIX and MANDERINO, JJ., join in this opinion.