Gail Freach, Administratrix of the Estate of Paul J. Freach, Deceased; Paul Freach and Gail Freach; Dorothy Keen, Administratrix of the Estate of Edmund J. Keen, Deceased; Edmund Keen and Dorothy Keen, Plaintiffs *v.* Commonwealth of Pennsylvania; Pennsylvania Department of Welfare; Farview State Hospital; Pennsylvania Board of Probation and Parole; Pennsylvania Bureau of Correction, Defendants.

Gail Freach, Administratrix of the Estate of Paul J. Freach, Deceased; Paul Freach and Gail Freach; Dorothy Keen, Administratrix of the Estate of Edmund J. Keen, Deceased; Edmund Keen and Dorothy Keen, Plaintiffs *v.* John P. Shovlin; John J. Burke; J. Harold Hughes; Stephen J. McEwen, Jr.; Tim Spizer; M. H. Truax; Ted Densham; E. J. McCann; Charles F. Genter; Bernard J. Willis; William H. Horan; Ambrose V. Lupcho; Joseph F. Comerford; Philip Powell; Joseph B. Raddin; Gerald Stanvich; Paul Farrell; Frank Walsh; Mr. Glaughlin; Mr. Cadullo; Mr. Fitzgerald; John McCrone; Al Petrucci; City of Scranton; William Russell; Kenneth Oprisko; Northeast Vector Control Assn.; John Doe; Richard Doe; Joseph Doe; Mary Doe; Ann Doe; Jane Doe; and William Wright, Defendants.

548

Argued September 11, 1975, before President Judge BOWMAN and Judges KRAMER and MENCER. Reargued December 2, 1975, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*John E. V. Pieski,* with him *John P. Pesota,* for plaintiffs.

*Norman J. Watkins,* Deputy Attorney General, *Joseph Goldberg,* Assistant Attorney General, *Cody H. Brooks, Christian S. Erb. Jr.,* with them *Beverly A. Nelson,* Deputy Attorney General, *Lawrence Silver,* Deputy Attorney General, *Robert P. Kane,* Attorney General, *Edwin L. Scherlis; Frank & Margolis; Henkelman, McMenamin, Kreder & O'Connell,* for defendants.

OPINION BY JUDGE WILKINSON, March 4, 1976:

This decision concerns two trespass actions within our original jurisdiction arising out of the sexual assault and killing of two minors, Paul J. Freach and Edmund J. Keen, in Scranton on November 1, 1973, alleged to have been committed by one William Wright. Almost ten years earlier, on January 28, 1964, the Court of Common Pleas of Delaware County found Wright to be mentally ill and of criminal tendency and ordered him committed to Farview State Hospital for treatment until further order of court. At the time, the State Board of Probation and Parole had also filed a warrant with the hospital to commit and retain Wright for a parole violation subject to further Board order.[1] However, on June 15, 1973, Wright was released from Farview on a long-term leave of absence, with all supervision and treatment being terminated in August of 1973. Wright lived and worked in the Scranton area, being employed by Northeast Vector Control Association, a nonprofit organization, and also by the City of Scranton as a special policeman and patrolman for which position he was issued a badge. He also managed to gain possession of a .25 caliber pistol. It is contended that Wright utilized the badge, the police

---

1. On March 5, 1955, when he was 16 years of age, Wright was convicted of the murder of his great aunt and sentenced to a term of 20 years in prison. However, he was paroled on March 13, 1963.

powers conferred upon him, his employment, and the pistol to allegedly attack and slay the minor decedents.

Plaintiffs, as parents and representatives of the estates of the minor decedents, have filed two complaints in trespass at Nos. 1411 and 1412 C. D. 1974, against the Commonwealth, certain of its agencies, officials and employees, and against others,[2] averring that they wrongfully allowed Wright the opportunity to acquire and retain the badge, police powers, employment, and pistol, thereby proximately causing the assault and death of the minor decedents. Specifically, plaintiffs allege that defendants knew, or should have known, of the extreme mental instability and criminal propensity of Wright, particularly toward children,[3] and of the outstanding court order and Board of Probation and Parole detainer precluding his release from Farview until further orders by those bodies; and that despite such knowledge, defendants did one or more of the following: permitted the continued release of Wright from confinement, failed to properly transmit information and warnings regarding his prior legal and medical status, failed to provide and terminated proper supervision and control over him, and failed to render

2. Specifically, the defendants at No. 1411 C.D. 1974 are the Commonwealth, the Department of Welfare, Farview State Hospital, the Board of Probation and Parole, and the Bureau of Correction. At No. 1412 C. D. 1974, the defendants are the Superintendent of Farview State Hospital, the Superintendent of the Parole Division of the Board of Probation and Parole, the District Attorney and Assistant District Attorney of Delaware County, various staff doctors and employees of Farview State Hospital, various parole agents of the Commonwealth, miscellaneous employees of the Commonwealth, the City of Scranton, its Superintendent of Police and his Chief Clerk, Northeast Vector Control Association and two of its employees, Wright, and various individuals whose names are unknown.

3. Plaintiffs allege that on March 3, 1964, Wright was indicted but not prosecuted for indecently assaulting an 11-year-old Delaware County girl; and that in 1965, while at Farview, he confessed to the 1954 killing of a four-year-old Delaware County boy but for which he was not prosecuted.

and terminated proper treatment of his mental infirmities.

Presently before this Court are preliminary objections of the Commonwealth, its agencies, officials and employees, grounded upon soverign, absolute and conditional immunity. Also before us are preliminary objections of Northeast Vector Control Association and two of its employees, named as defendants herein, challenging this Court's jurisdiction over entities and individuals not agencies or officers of the Commonwealth.

Initially we reject plaintiffs' contention that Section 603 of the Mental Health and Mental Retardation Act of 1966, Act of October 20, 1966, Special Sess. No. 3, P.L. 96, *as amended*, 50 P.S. §4603,[4] constitutes a waiver of immunity from tort liability enjoyed by the Commonwealth, its officials and employees. We recently declined an identical argument in *Heifetz v. Philadelphia State Hospital*, 22 Pa. Commonwealth Ct. 325, 348 A.2d 455 (1975), and need not repeat our rationale. Thus, immunity is properly raised in the instant controversy.

As to the Commonwealth, the Department of Welfare, Farview State Hospital, the Board of Probation and Parole, and the Bureau of Correction, we are required to sustain their preliminary objections. Pa. Const. art. I, §11; *Biello v. Pennsylvania Liquor Control Board*, 454 Pa. 179, 301 A.2d 849 (1973); *McCoy v. Commonwealth*, 9 Pa. Commonwealth Ct. 107, 305 A.2d 746 (1973), *aff'd per curiam*, 457 Pa. 513, 326 A.2d 396 (1974). The complaint against them must, therefore, be dismissed.

As to defendants Burke, McEwen, and Hughes, who are alleged to have acted at all times within their official

---

4. Section 603 provides:

"No person and no governmental or recognized nonprofit health or welfare organization or agency shall be held civilly or criminally liable for any diagnosis, opinion, report or any thing done pursuant to the provisions of this act if he acted in good faith and not falsely, corruptly, maliciously or without reasonable cause; provided, however, that causes of action based upon gross negligence or incompetence shall not be affected by the immunities granted by this section."

capacities as, respectively, the Superintendent of the Parole Division of the Board of Probation and Parole, and the District Attorney and the Assistant District Attorney of Delaware County, we hold them to be high public officials of the Commonwealth and thus absolutely immune from liability. *See DuBree v. Commonwealth,* 8 Pa. Commonwealth Ct. 567, 303 A.2d 530 (1973). In so doing, we find such defendants acted within the scope of their authority and reject plaintiffs' contentions to the contrary. Although plaintiffs have generally averred that the conduct of these defendants fell outside the bounds of authority, their specific factual allegations fail to so indicate.

As to defendant Shovlin, who is sued both in his capacity as Superintendent of Farview State Hospital and as a physician, we have carefully examined plaintiffs' complaint and are satisfied that it fails to allege any facts that Shovlin acted in any capacity other than as Superintendent. Moreover, we are satisfied that the complaint fails to establish that Shovlin's actions were without his authority as Superintendent. Accordingly, he is likewise protected by absolute immunity. *McCoy, supra.* We must, therefore, also dismiss the complaint against defendants Burke, McEwen, Hughes, and Shovlin.

As to the remaining State employees named as defendants herein, we hold that they are not "officers" of the Commonwealth and thus not within our original jurisdiction. *Forney v. Harrisburg State Hospital,* 18 Pa. Commonwealth Ct. 17, 336 A.2d 709 (1975). Consequently, although they may be conditionally immune from liability,[5] *see DuBree, supra,* we lack authority to so determine and must transfer the case to a court of proper jurisdiction. *Forney, supra.* Similarly, we lack jurisdiction over Northeast Vector Control Association, its two

---

5. Plaintiffs argue, however, that such immunity has been lost, pointing to allegations in their complaint which assert that the actions of such defendants were outside the scope of authority and/or committed in an intentionally malicious, wanton and reckless manner.

employees and all other defendants not alleged to be agencies or officers of the Commonwealth and must likewise transfer. *Id.*; *Hart v. Spectrum Arena, Inc.*, 15 Pa. Commonwealth Ct. 584, 329 A.2d 311 (1974).

Accordingly, we enter the following

ORDER

Now, March 4, 1976, the preliminary objections of the Commonwealth and the various agencies thereof listed as defendants at No. 1411 C. D. 1974, are hereby sustained and plaintiffs' complaint is dismissed.

It is further ordered that the preliminary objections of defendants Shovlin, Burke, McEwen and Hughes, at No. 1412 C. D. 1974, are hereby sustained and plaintiffs' complaint as to those defendants is dismissed.

It is further ordered, pursuant to Section 503(b) of the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P. L. 673, *as amended*, 17 P. S. §211.503(b), that the causes of action against the remaining defendants listed at No. 1412 C. D. 1974, shall be and are hereby transferred to the Court of Common Pleas of Lackawanna County unless, within 30 days hereof, the parties to those actions notify the Chief Clerk of an agreement that the actions be transferred to a different court of proper jurisdiction in which case they shall be transferred to the agreed upon court.

The Chief Clerk shall certify to the Prothonotary of the court to which these actions are transferred a photocopy of the docket entries in this Court at No. 1412 C. D. 1974, and shall transmit to him the record thereof.

CONCURRING AND DISSENTING OPINION BY JUDGE CRUMLISH, JR.:

I must respectfully dissent. Legion are the cases wherein our Supreme Court has considered and reaffirmed the doctrine of sovereign immunity. This Court has consistently declined to examine the merits of the doctrine

because it believes that we may not disturb the pronouncements of our Supreme Court which hold that the soverign immunity of the Commonwealth is constitutionally ordained[1] and that it may be waived only by specific proclamation by the legislature. *Biello v. Pennsylvania Liquor Control Board,* 454 Pa. 179, 301 A.2d 849 (1973) ; *Sweigard v. Pennsylvania Dept. of Transportation,* 454 Pa. 32, 309 A.2d 374 (1973) ; *Brown v. Commonwealth,* 453 Pa. 566, 305 A.2d 868 (1973). However, governmental immunity (immunity of units of local government) as distinguished from sovereign immunity (immunity of the Commonwealth and its agencies) is not of constitutional origin. Rather, governmental immunity is a creature of judicial conception and can and has met its demise by the stroke of the judicial pen. *Ayala v. Philadelphia Board of Public Education,* 453 Pa. 584, 305 A.2d 877 (1973).

While I recognize that this Court is bound by the pronouncements of our Supreme Court in *Brown* and *Biello,* I am obliged to express my notions as they relate to the cause before us.

I cannot agree that sovereign immunity is of constitutional origin. Rather, I agree with the dissenting Justices[2] in *Sweigard, Brown,* and *Biello, supra,* that Artice I, Section 11 of the Pennsylvania Constitution neither proclaims nor disclaims sovereign immunity but that it merely prescribes the manner in which the Commonwealth may waive the *power* to immunize itself from tort liability. In my view then, sovereign immunity, having been born in the common law, is subject to destruction at the hands of the judiciary[3] just as govern-

---

1. Article I, §11 of the Pennsylvania Constitution.

2. In *Sweigard* and *Brown,* Mr. Justice ROBERTS dissented with an opinion in which Mr. Justice NIX and Mr. Justice MANDERINO joined. In *Biello,* Mr. Justice NIX *dissented* with an opinion in which Mr. Justice ROBERTS joined.

3. In my dissenting opinion in *Sweigard v. Commonwealth,* 5

mental immunity. *See also* the dissenting opinion of Mr. Justice ROBERTS, joined in by Mr. Justice NIX and Mr. Justice MANDERINO in *Tarantino v. Allentown State Hospital,* Pa. , 351 A.2d 247 (1976).

Again recognizing that we are bound to accept the precept that sovereign immunity is a creature of the constitution and may be waived only by specific statutory enactment, two issues continually emerge from the sovereign immunity controversies which, with unabating insistence, demand resolution. First, is there particular legislation which waives the sovereign immunity in a given instance? Second, should individual defendants be immune absolutely, immune conditionally, or not immune at all?

In the case before us, the majority has rejected Plaintiff's contention that Section 603 of the Mental Health and Mental Retardation Act of 1966[4] (Act) constitutes a legislative waiver of sovereign immunity. I disagree. Section 603 provides:

> "No person or no governmental or recognized nonprofit health or welfare organization or agency shall be held civilly or criminally liable for any diagnosis, opinion, report or any thing done pursuant to the provisions of this act if he acted in good faith and not falsely, corruptly, maliciously or without reasonable cause; provided, however, that causes of action based upon gross negligence or incompetence shall not be affected by the immunities granted by this section."

In *Heifetz v. Philadelphia State Hospital,* 22 Pa. Commonwealth Ct. 325, 348 A.2d 455 (1975), we held that Section 603 grants immunity to persons, organiza-

---

Pa. Commonwealth Ct. 637, A. 2d (1972), *aff'd,* 454 Pa. 32, 309 A. 2d 374 (1973), in which Judge KRAMER joined, I contended that our Court can consider the merits of the contention that sovereign immunity is reviewable by the judiciary.

4. Act of October 20, 1966, Special Sess. No. 3, P.L. 96, *as amended,* 50 P.S. §4603.

tions and agencies acting under the authority of the Act. We also held that a cause of action based on gross negligence or incompetence is not created by this section if it would not otherwise exist in law. I reiterate my position in the *Heifetz* dissent that Section 603 of the Act waives the constitutional immunity of governmental or non-profit health or welfare organizations where the actions are based upon gross negligence or incompetence. In my view, the averments of the Plaintiffs in this case constitute a good cause of action under Section 603 and they should be able to proceed on the merits.

As to the second issue for our determination in these controversies, several of the individuals in the instant case do not qualify as "high public officials" according to my notion of the meaning of that term. In *DuBree v. Commonwealth*, 8 Pa. Commonwealth Ct. 567, 303 A.2d 530 (1973), we held that the absolute immunity enjoyed by the Commonwealth flows to "high public officials" acting within the scope of their authority. *DuBree* also held that other employees who are not "high public officials" are "conditionally immune" from suit, *i.e.*, they enjoy immunity when they are acting within the scope of their employment and do not act in an intentional, malicious, wanton or reckless manner. In determining who is a "high public official," *DuBree* instructs us to inquire into the nature of a particular individual's duties, the importance of his office, and the extent to which he is, if at all, a policy maker.

Here I would agree that Defendant Shovlin, as Superintendent of Farview State Hospital, is a "high public official" under the definition in *DuBree, supra. See McCoy v. Liquor Control Board*, 9 Pa. Commonwealth Ct. 107, 305 A.2d 746 (1973), *aff'd*, 457 Pa. 513, 325 A.2d 396 (1974). Section 417 of the Act, 50 P.S. §4417, outlines the powers and duties of directors[5] of mental health facilities.

---

5. "Directors" include superintendents. Section 102 of the Act, 50 P.S. §4102.

Unquestionably, his authority and responsibility to be exercised in the administration of mental health care within the facility is of the highest magnitude. Furthermore, I would *concur* in that part of the Court's opinion which directs that the case be transferred to Common Pleas Court as to those defendants[6] who are not "officers" of the Commonwealth and therefore not within our original jurisdiction.

However, I disagree with the Courts conclusion as to the immunity status of Defendants Burke, McEwen and Hughes, respectively, the Superintendent of the Parole Division, the District Attorney of Delaware County and an Assistant District Attorney of Delaware County. Reiterating my dissent in *DuBree, supra,* there should be a more extensive inquiry into the nature of the duties and sphere of authority of these Defendants in order to ascertain whether they are "high public officials." Without such an examination, Defendants are obliged to participate in legal marathons at the whim of or ignorance of litigious plaintiffs. For example, it may be that District Attorneys and their assistants are "high public officials" when they engage in investigative and prosecutorial duties. However, in their relations with the Board of Probation and Parole, they may or may not appear before the Board, may or may not be called upon to recite the factual background of a case, may or may not be asked for recommendations. Obviously, theirs is not the duty to make policy or decisions. In short, their duties may be merely collateral to the Board's. Insofar as the Superintendent of the Parole Division is concerned, the averments in the complaint provide no basis, absent

---

6. Specifically, these Defendants are: various staff doctors and employees of Farview State Hospital; various parole agents of the Commonwealth; miscellaneous employees of the Commonwealth; the City of Scranton; Scranton's Superintendent of Police and his Chief Clerk; Northeast Vector Control Association and two of its employees; William Wright; and various other unknown individuals.

further inquiry, for the conclusion that he is a "high public official."

It has long been my view that discovery procedures similar to interrogatories or depositions should be required so that more information may be at hand for this Court to determine the precise nature of the official duties of individual defendants prior to the filing of Preliminary Objections. Only in this way can this Court make a fair and factual evaluation as to who is a "high public official."

In summary, my position is that the Pennsylvania Constitution neither requires nor prohibits sovereign immunity but, rather, is neutral on the subject and merely sets forth the procedures whereby the Commonwealth may waive the power to be immune. Therefore, it is within the power of the judiciary to examine the merits of the doctrine and, if necessary, excise the doctrine from our law. Furthermore, even assuming, *arguendo*, the constitutional origin of sovereign immunity, Section 603 of the Act is precisely the kind of legislation envisioned by the draftsmen of the constitution whereby the sovereign immunity is waived. Finally, in all sovereign immunity cases, we must develop a discovery procedure designed to adduce all relevant information as to the duties of an individual defendant before cloaking him with absolute immunity.

I dissent.

Judge KRAMER joins in this concurring and dissenting opinion.

---

DISSENTING OPINION BY JUDGE BLATT:

I must also dissent. The almost incredible facts alleged in this case, presenting as they do a terrifying example of the injurious consequences which can result from gross negligence or incompetence on the part of mental hospital personnel, have prompted me to reconsider my position with regard to the sovereign immunity

of public mental health institutions and their employees. As the majority here recognizes, this Court did hold in *Heifetz v. Philadelphia State Hospital*, 22 Pa. Commonwealth Ct. 325, 348 A.2d 455 (1975) that Section 603 of the Mental Health and Mental Retardation Act of 1966 (Act)[1] does not create a cause of action based upon the gross negligence or incompetence of such public institutions and their employees (Judge CRUMLISH dissenting). After a serious reconsideration of the issue now, however, I find that I must agree with Judge CRUMLISH that the legislature in its wisdom enacted Section 603, realizing that individuals suffering injuries as a result of such misconduct on the part of mental hospital personnel must be afforded an appropriate remedy regardless of whether their injury was suffered in a public or in a private institution at the hands of public or of private officials or employees. I now believe, therefore, that Section 603 should be considered a sufficient legislative declaration of waiver of sovereign immunity pursuant to the provisions of Article I, Section 11 of the Constitution of Pennsylvania.

I would, therefore, deny the defendants' preliminary objections and allow this case to proceed to trial.

---

1. Act of October 20, 1966, Special Sess. No. 3, P. L. 96, *as amended*, 50 P. S. §4603.