370 A.2d 1163

Gail FREACH, Administratrix of the Estate of
Paul J. Freach, Deceased, et al.,
Appellants,

v.

COMMONWEALTH of Pennsylvania et al.
Gail FREACH, Administratrix of the Estate of
Paul J. Freach, Deceased, et al.,
Appellants,

v.

John P. SHOVLIN et al.

Supreme Court of Pennsylvania.

Argued May 7, 1976.

Decided Feb. 28, 1977.

560

John E. V. Pieski, Scranton, for appellants.

Norman J. Watkins, Deputy Atty. Gen., for the Com.

Edwin L. Scherlis, Joe Goldberg, Philadelphia, Christian S. Erb, Jr., Harrisburg, Cody H. Brooks, Scranton, for appellees, Shovlin and Burke.

Before JONES, C. J., and EAGEN, O'BRIEN, ROB-
ERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

POMEROY, Justice.

These are two survival and wrongful death actions
brought by the personal representatives and parents of
two teenage boys, Paul Freach and Edmund Keen, re-
spectively, both of whom were allegedly murdered by one
William Wright. The defendants in No. 356 are the
Commonwealth of Pennsylvania, the Pennsylvania De-
partment of Welfare, Farview State Hospital, the Penn-
sylvania Board of Probation and Parole, and the Penn-
sylvania Bureau of Correction. The defendants in No.
357 are the superintendent, six staff doctors and numer-
ous employes of Farview State Hospital, the superintend-
ent of the parole division and various employees of the
Board of Probation and Parole, the district attorney and
the deputy assistant district attorney of Delaware Coun-
ty, miscellaneous Commonwealth employes, the City of
Scranton, its superintendent of police and his chief clerk,
the Northeast Vector Control Association and two of its
employes, and Wright himself.

Both complaints allege that in 1955 Wright had been
convicted of murdering his great aunt by bludgeoning
her to death; that in 1964 he had been arrested for as-
sault with intent to ravish, indecent assault, assault and
battery, and corrupting the morals of a minor, all in con-
nection with an attack upon an eleven year old girl; that
in 1964 he had been committed to Farview State Hospital
["Farview"] pursuant to the Mental Health Act of
1951;[1] that while at Farview, Wright had confessed to

1. The Mental Health Act of 1951, Act of June 12, 1951, P.L. 533,
   was repealed by the Mental Health and Mental Retardation Act
   of 1966. See the Act of October 20, 1966, Special Session No. 3,
   P.L. 96, art. VII, § 701, as amended, 50 P.S. § 4701.

the 1954 murder of a four year old boy he was attempting to molest by pushing a toy rifle down the boy's throat; that in 1973 Wright was released from Farview and all treatment was terminated; that Wright was never brought to trial on the charges stemming from the 1964 assault on the girl, nor was he charged with any crime in connection with the murder of the boy; that Wright was thereafter employed by the City of Scranton and the Northeast Vector Association as a special policeman. The complaints further allege that, although each of the defendants should have known of Wright's mental instability and criminal tendencies, each was in part responsible for his release from custody and his being placed in a position of authority—both of which circumstances, it is alleged, directly contributed to his having the opportunity to assault and kill the minor children who are the plaintiffs' decedents herein.

The defendants in No. 356 filed preliminary objections to the complaint on the ground of immunity from suit. In No. 357 two sets of preliminary objections were filed: one set by all but two of the Commonwealth officials and employes sued, and the other by the district attorney and assistant district attorney of Delaware County.[2] Both sets of preliminary objections asserted immunity from suit and challenged the jurisdiction of the Commonwealth Court.

The Commonwealth Court (1) sustained the preliminary objections of all the defendants in No. 356 on the ground that the action against them was barred by sovereign immunity; (2) sustained the preliminary

2. No preliminary objections were filed by the City of Scranton, its superintendent of police, John McCrone, and his chief clerk, Al Petrucci, the Northeast Vector Association and its employes, William Russell and Denneth Oprisko, and E. J. McCann and Paul Farrell, employes of the Board of Probation and Parole. As to these defendants the Commonwealth Court transferred the case to the Court of Common Pleas of Lackawanna County. *See* Appellate Court Jurisdiction Act, Act of July 31, 1970, P.L. 673, sec. 503(b), as amended; 17 P.S. § 211.503(b).

objections of John P. Shovlin, the superintendent of Farview State Hospital; John J. Burke, the superintendent of the parole division of the Board of Probation and Parole, Stephen J. McEwen, the district attorney of Delaware County, and J. Harold Hughes, the assistant district attorney of Delaware County on the ground that these persons were "high public officials" and therefore were absolutely immune from suits arising out of the performance of their duties; and (3) transferred the case as to all remaining defendants in No. 357 to the Court of Common Pleas of Lackawanna County on the ground that, although some of the defendants may enjoy "conditional" immunity from suit, none of them was the Commonwealth or an officer thereof as those terms are used in Section 401(a)(1) of the Appellate Court Jurisdiction Act of 1970 [3] and therefore that the Commonwealth Court lacked original jurisdiction of the action as to them.[4] These appeals by the plaintiffs followed.[5]

In part I of this opinion we shall consider the holding of the Commonwealth Court sustaining the preliminary objections as to the defendants in No. 356; the sustaining of preliminary objections as to the four defendants in No. 357 whom the Commonwealth Court held are "high public officials" will be reviewed in part II; and in part III we shall deal with the transfer of the case as to all remaining defendants in No. 357.[6]

3. Act of July 31, 1970, P.L. 673, No. 223, art. IV, § 401(a)(1), 17 P.S. § 211.401(a)(1) (Supp.1976).

4. Although several of the defendants as to whom the case was transferred did not file preliminary objections, see note 2 *supra* the Commonwealth Court did not err in *sua sponte* transferring the case as to them, since the basis of the transfer was a determination that the Commonwealth Court lacked subject matter jurisdiction.

5. Jurisdiction of these appeals is in this Court by virtue of the Act of July 31, 1970, P.L. 673, No. 223, art. II, § 203, 17 P.S. § 211.203 (Supp.1976).

6. It is to be noted that immunity from suit is an affirmative defense which should be pleaded under the heading "New Matter"

## I.

In the absence of legislative authorization, suits against the Commonwealth are barred by Article I, Section 11, of the Constitution of Pennsylvania.[7] Appellants do not argue that the defendants in No. 356—the Commonwealth itself, the Pennsylvania Department of Welfare, the Pennsylvania Board of Probation and Parole, and the Pennsylvania Bureau of Correction—are not part of the Commonwealth as that term is used in Article I, Section 11, and therefore are not entitled to sovereign immunity. See *Specter v. Commonwealth,* 462 Pa. 474, 477, 341 A.2d 481 (1975) (part II of the opinion announcing the decision of the Court); *Ayala v. Philadelphia Board of Education,* 453 Pa. 584, 305 A.2d 877 (1973); *Greer v. Metropolitan Hospital,* 235 Pa.Super. 266, 341 A.2d 520 (1975) (petition for allowance of appeal to this Court denied November 5, 1975). Rather, appellants contend that by enacting Section 603 of the

in a responsive pleading; it is not properly raised by preliminary objections. *See* Pa.R.C.P. 1030. Since, however, the plaintiffs-appellants did not object at any point in the proceedings before the Commonwealth Court to the manner in which the issue of immunity was raised and the Commonwealth Court decided the immunity questions on their merits, we will do likewise. By so doing we do not condone the disregard of the Pennsylvania Rules of Civil Procedure by appellees. *See also* the dissenting opinion by Judge Crumlish in this case, 23 Pa.Cmwlth. 546 at 553, 354 A.2d 908 at 912.

7. Article I, Section 11, provides in part that "[s]uits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct." This Court has repeatedly construed this language as immunizing the Commonwealth from suit in the absence of legislative provision. See *Sweigard v. Department of Transportation,* 454 Pa. 32, 309 A.2d 374 (1973); *Brown v. Commonwealth,* 453 Pa. 566, 305 A.2d 868 (1973); *Commonwealth v. Orsatti,* 448 Pa. 72, 292 A.2d 313 (1972); *Bannard v. New York State Natural Gas Corp.,* 404 Pa. 269, 172 A.2d 306 (1960); *Specter v. Commonwealth,* 462 Pa. 474, 341 A.2d 481 (1975) (part I of the opinion announcing the decision of the Court); *Biello v. Pennsylvania Liquor Control Board,* 454 Pa. 179, 301 A.2d 849 (1973) (opinion announcing the decision of the Court).

Mental Health and Mental Retardation Act of 1966 [8] the General Assembly did authorize suits such as theirs against the Commonwealth. Section 603 provides:

"No person and no governmental or recognized non-profit health or welfare organization or agency shall be held civilly or criminally liable for any diagnosis, opinion, report or any thing done pursuant to the provisions of this act if he acted in good faith and not falsely, corruptly, maliciously or without reasonable cause; provided, however, that causes of action based upon gross negligence or incompetence shall not be affected by the immunities granted by this section."

It is argued that appellants' complaint charges gross negligence on the part of Commonwealth employes in the performance of acts done pursuant to the Act of 1966 in connection with the release of Wright from custody without adequate supervision, and that this suit is therefore authorized by the proviso clause of Section 603, above quoted.

We have held, however, that legislative authorization of suits against the Commonwealth is not to be inferred from language which less than clearly expresses an intent to subject the Commonwealth to suit. In *Brown v. Commonwealth*, 453 Pa. 566, 570, 305 A.2d 868, 869 (1973), for example, we rejected "the notion that the existence of statutorily mandated public liability insurance evidences a legislative intent to reject sovereign immunity . . .." While Section 603 is by its terms applicable to "governmental" organizations or agencies, it does not name the Commonwealth as such; nor does it make reference to Article I, Section 11 of the Constitution or to sovereign immunity. Although the statutory language is concededly compatible with the non-existence of sovereign immunity, it is equally consistent with the

8. Act of October 20, 1966, Special Session No. 3, P.L. 96, art. VI, § 603, 50 P.S. § 4603.

existence of the doctrine. We therefore conclude that the word "governmental" refers to governmental bodies other than the Commonwealth itself [9] and therefore that Section 603 does not constitute a legislative authorization of suits against the Commonwealth under Article I, Section 11. Accordingly, we shall affirm the order of the Commonwealth Court in No. 356.

## II.

To be distinguished from the constitutionally-based doctrine of sovereign immunity in Pennsylvania is the common-law concept of "official immunity"—a status which pertains to government officials and employees. The doctrine of official immunity in Pennsylvania is twofold: So-called "high public officials" have been held to enjoy an absolute immunity from suits arising out of the performance of their duties. See *Jonnet v. Bodick,* 431 Pa. 59, 244 A.2d 751 (1968); *Montgomery v. Philadelphia,* 392 Pa. 178, 140 A.2d 100 (1959); *Matson v. Margiotti,* 371 Pa. 188, 88 A.2d 892 (1952). Other public officers and employes are protected by a more limited form of immunity. See *United States ex rel. Fear v. Rundle,* 506 F.2d 331 (3d Cir. 1974); *Ammlung v. Platt,* 224 Pa.Super. 47, 302 A.2d 491 (1973). The Commonwealth Court held that the defendants Shovlin, Burke, McEwen, and Hughes were "high public officials" and thus cloaked with absolute immunity.

Whether the Commonwealth Court was correct in finding these four defendants to be "high public officials" is, however, a question we need not decide, for we

9. In *Ayala v. Philadelphia Board of Education,* 453 Pa. 584, 305 A.2d 877 (1973) we abrogated the immunity which had theretofore been enjoyed by political subdivisions and governmental bodies other than the Commonwealth itself. See also *Specter v. Commonwealth,* 462 Pa. 474, 341 A.2d 481 (1975) (part II of the opinion announcing the decision of the Court); *Greer v. Metropolitan Hospital,* 235 Pa.Super. 266, 341 A.2d 520 (1975) (petition for allowance of appeal to this Court denied November 5, 1975).

have concluded that Section 603 of the Mental Health and Mental Retardation Act of 1966, 50 P.S. § 4603, quoted in part I of this opinion,[10] supersedes the common law doctrine of official immunity in cases in which the allegedly wrongful acts are done pursuant to that statute. We also are of the opinion, although the complaint is not entirely clear on the point, that the acts of the defendants of which the plaintiffs complain were arguably acts done pursuant to the Act of 1966.

Section 603 provides that "no person . . . shall be held civilly . . . liable for any diagnosis, opinion, report or any thing done pursuant to the provisions of this act if he acted in good faith and not falsely, corruptly, maliciously, or without reasonable cause. . . ." Although this language appears to grant or create, rather than to deny or waive, immunity from suits, its clear negative implication is that any person acting pursuant to the provisions of the act may be held liable for conduct which is lacking in good faith or is false, corrupt, malicious, or without reasonable cause. The statute goes on to provide, moreover, that "causes of action based upon gross negligence or incompetence shall not be affected by the immunities granted by this section." Thus, Section 603 creates a limited immunity—an immunity which is expressly inapplicable to several enumerated types of conduct. In our view, the phrase "no person" is broad enough to include all officials of the Commonwealth and its governmental components whether "high" or otherwise, as well as private persons. We therefore conclude that the use of the phrase "no person" evidences an intent on the part of the legislature that the limited immunity granted by Section 603 will apply to all Commonwealth and governmental officials and will supersede common law official immunity in cases to which Section 603 applies. Thus, a suit against even a "high

10.   See text at n. 8 *supra.*

public official" may be maintained if it appears from the complaint (a) that the cause of action is based upon acts done pursuant to the Mental Health and Mental Retardation Act of 1966, and (b) that the acts complained of are not within one of the categories of conduct to which limited immunity is granted by Section 603.

The complaint in No. 357 avers that the defendant Shovlin, among others at Farview, failed properly to treat William Wright and unlawfully terminated supervision and released him from confinement; that the release of Wright was improperly approved by agents of the parole division; and that Wright's release was in part due to a failure on the part of the defendants McEwen and Hughes to inform the officials at Farview of a court order requiring Wright's commitment. We are satisfied that the complaint, despite its patent prolixity, makes allegations of gross negligence or incompetence as to the defendants Shovlin, Burke, McEwen, and Hughes in the performance of acts pursuant to the Mental Health and Mental Retardation Act of 1966. Accordingly, we shall reverse the order of the Commonwealth Court sustaining preliminary objections as to these four defendants.

### III.

Section 401(a)(1) of the Appellate Court Jurisdiction Act of 1970 [11] vests the Commonwealth Court with exclusive original jurisdiction of actions or proceedings against "the Commonwealth or any officer thereof, acting in his official capacity. . . ." After having determined that the plaintiffs' suit against the defendants Shovlin, Burke, McEwen, and Hughes was barred by the doctrine òf official immunity, the Commonwealth Court concluded that it lacked original jurisdiction of the case as to all the remaining defendants because, although

11. Act of July 31, 1970, P.L. 673, No. 223, art IV, § 401(a)(1), 17 P.S. § 211.401(a)(1) (Supp.1976).

some were Commonwealth employes, none was an "officer" of the Commonwealth. Thus, without reaching the questions of immunity from suit, the Commonwealth Court transferred the case as to the remaining defendants to the Court of Common Pleas of Lackawanna County.

In view of the fact that we have concluded that the preliminary objections of the defendants Shovlin, Burke, McEwen, and Hughes should not have been sustained, we need not reach the question whether the Commonwealth Court correctly concluded that the other Commonwealth employes sued were not Commonwealth officers for purposes of that court's jurisdiction. Since the defendants Shovlin, Burke, McEwen, and Hughes remain defendants, we believe the Commonwealth Court should retain jurisdiction of the entire case, even as to those defendants who would clearly not otherwise fall within the original jurisdiction of that court.

As noted above, subject to certain exceptions not here relevant, the Commonwealth Court has original jurisdiction of all cases against the Commonwealth or its officers. Section 401(a)(1) of the Appellate Court Jurisdiction Act does not expressly address the question whether, if the Commonwealth or one of its officers is an original defendant, the Commonwealth Court's jurisdiction of the case is broad enough to permit the joinder as original defendants of others who are clearly not the Commonwealth or one of its officers. The Commonwealth Court has held that where the Commonwealth is an indispensable party to an action, the Commonwealth Court has jurisdiction of the case as to all original parties defendant. *Township of Pleasant, Warren City v. Erie Insurance Exchange*, 22 Pa.Cmwlth. 307, 348 A.2d 477 (1975). In our view, the language of Section 401(a)(1) may properly be construed to give the Commonwealth Court jurisdiction as to all the defendants in a case such as this where it is alleged that the Commonwealth or its officers

share joint and several liability with others who are not the Commonwealth or its officers.[12]

In No. 356, the order of the Commonwealth Court is affirmed.

In No. 357, the order of the Commonwealth Court sustaining the preliminary objections of defendants Shovlin, Burke, McEwen, and Hughes is reversed and the case is remanded for further proceedings not inconsistent with this opinion; and the order of the Commonwealth Court transferring the case as to all remaining defendants to the Court of Common Pleas of Lackawanna County is vacated, and the case as to those defendants is transferred to the Commonwealth Court.

ROBERTS J., filed a concurring and dissenting opinion in which NIX and MANDERINO, JJ., join.

ROBERTS, Justice, concurring and dissenting.

I cannot agree with the majority that the doctrine of sovereign immunity bars suit against the Commonwealth in this case. Nor can I agree that section 603 of the Mental Health and Mental Retardation Act of 1966 [1] was not intended to authorize suits against the Commonwealth. Like the majority, however, I conclude the four "high public officials" [2] are subject to liability for acts

12. Pa.R.C.P. 2229(b) allows joinder of multiple defendants against whom a plaintiff asserts

"any right to relief jointly, severally or in the alternative, in respect of or arising out of the same transaction, occurrence or series of occurrences, if any common questions of law or fact affecting the liabilities of all such persons will arise in the action."

As noted in 3 Goodrich-Amram, Procedural Rules Service § 2229(b)–2 (1962):

"If the issues between the various parties may be conveniently tried and determined in one action, the joinder is desirable." For a discussion of the treatment of the analogous federal statute, 28 U.S.C. § 1246, see *Aldinger v. Howard,* 427 U.S. 1, 96 S. Ct. 2413, 49 L.Ed.2d 276 (1976).

1. Act of October 20, 1966, P.L. 96, § 603, 50 P.S. § 4603 (1969).

2. The four officials are the superintendent of Fairview State Hospital, the superintendent of the parole division of the Board of

done pursuant to the Mental Health and Mental Retardation Act of 1966 [3] which are in bad faith, false, corrupt, malicious, or without reasonable cause. I also agree that the Commonwealth Court should retain jurisdiction over the entire case.

## I

I dissent from the majority's decision to uphold the defense of sovereign immunity, in part I of its opinion, for the reasons set forth in my dissenting opinions in *Sweigard v. Department of Transportation*, 454 Pa. 32, 35, 309 A.2d 374, 377 (1973) (joined by Nix and Manderino, JJ.) and *Brown v. Commonwealth*, 453 Pa. 566, 577, 305 A.2d 868, 871 (1973) (joined by Nix and Manderino, JJ.) and in Mr. Justice Nix's dissenting opinion in *Biello v. Pennsylvania Liquor Control Board*, 454 Pa. 179, 187, 301 A.2d 849, 853 (1973) (joined by Roberts, J.). Sovereign immunity is a judicially created anachronism which should be judicially abolished.

I cannot agree with the majority that the doctrine of sovereign immunity is constitutionally mandated. The Constitution provides:

"All courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have a remedy by due course of law, and right and justice administered without sale, denial or delay. Suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may direct."

Pa.Const. art. I, § 11. This section, which guarantees every person a remedy for injuries done to him, does not adopt the doctrine of sovereign immunity. See *Brown v. Commonwealth*, 453 Pa. 566, 580, 305 A.2d 868, 875

Probation and Parole, and the district attorney and assistant district attorney of Delaware County.

3. 50 P.S. § 1401 et seq. (1969).

(1973) (dissenting opinion of Manderino, J.). As Mr. Justice Nix has stated:

> "The Constitution is . . . neutral—it neither requires nor prohibits sovereign immunity. The framers of the Constitution accepted the then prevalent concept of sovereignty to include immunity from suit, and attempted through this section to implement the power of the State to consent to actions brought against it.
>
> . . . In my judgment it is an unwarranted conclusion to assume from the grant of the power of consent to the legislative branch [to consent to suits against the Commonwealth] that this was implicitly an abrogation of the court's traditional powers to abolish common law principles when they no longer meet the needs of the time."

*Biello v. Pennsylvania Liquor Control Board,* 454 Pa. at 189, 301 A.2d at 854 (dissenting opinion of Nix, J., joined by Roberts, J.).

Nor can I agree with the majority that section 603 of the Mental Health and Mental Retardation Act of 1966 [4] does not authorize suits against the Commonwealth. Section 603 provides:

> "No person and no governmental or recognized non-profit health or welfare organization or agency shall be held civilly or criminally liable for any diagnosis, opinion, report or any thing done pursuant to the provisions of this act if he acted in good faith and not falsely, corruptly, maliciously or without reasonable cause; provided, however, that causes of action based upon gross negligence or incompetence shall not be affected by the immunities granted by this section."

By enacting this section the Legislature directed that the Commonwealth may be sued in cases which fall outside the limited immunity provided in this section. See Pa.

4. Id. § 4603.

Const. art. I, § 11. The statutory grant of limited immunity presupposes abrogation of the absolute immunity which existed at common law. As the majority states in Part II of its opinion:

"Although this language appears to grant or create, rather than to deny or waive, immunity from suits, its clear negative implication is that any person acting pursuant to the provisions of the act may be held liable for conduct which is lacking in good faith or is false, corrupt, malicious, or without reasonable cause."

This liability, created for acts outside the scope of the immunity provided, applies to "persons" as well as "governmental" bodies.

The majority concludes, however, that by "governmental" the Legislature intended only to refer to governmental bodies other than the Commonwealth. I see no basis for such a distinction. When the statute was enacted both the Commonwealth and other governmental bodies were immune from suit. Not until six years later was the immunity of political subdivisions and governmental bodies other than the Commonwealth abrogated. See *Ayala v. Philadelphia Board of Education*, 453 Pa. 584, 305 A.2d 877 (1973). Unless the purpose of section 603 of the act was to consent to suit, the reference to governmental bodies would have been meaningless.[5] I conclude that when the Legislature referred to governmental bodies, it meant all governmental bodies.[6] Therefore, section 603 constitutes a consent to sue the Commonwealth.

---

5. See 1 Pa.C.S.A. § 1922 (1976):
   "In ascertaining the intention of the General Assembly in the enactment of a statute the following presumptions . . . may be used.

   . . . . . . . . . .

   (2) That the General Assembly intends the entire statute to be effective and certain."

6. See id. § 1903(a): "Words and phrases shall be construed . . . according to their common and approved usage."

## II

Although I find it more difficult to determine whether section 603 was intended to supplant official immunity than whether it was intended to supplant sovereign immunity, I conclude that section 603 was intended to authorize suits against high public officials.

The reference to governmental bodies in section 603 includes only bodies which had absolute immunity at the time section 603 was enacted. The reference to persons, on the other hand, includes both high public officials, who have absolute immunity at common law, and individuals not protected by such immunity. Because section 603 would provide immunity for some individuals who were not immune at common law, it is less apparent that the Legislature intended for the immunities provided in section 603 to supplant the common law immunity enjoyed by high public officials.[7]

Commentators differ widely on how broad the immunity extended to public officials should be, compare 3 K. Davis, Administrative Law Treatise §§ 26.01–26.07 (1958) with W. Prosser, Torts § 132 (4th ed. 1971), but agree that some form of immunity is necessary:

> "The complex process of legal administration requires that officers shall be charged with the duty of making decisions, either of law or of fact, and acting in accordance with their determinations. Public servants would be unduly hampered and intimidated in the discharge of their duties, and an impossible burden would fall upon all our agencies of government if the immunity to private liability were not extended, in some reasonable degree, to those who act improperly, or exceed the authority given."

W. Prosser, Torts § 132, at 987 (4th ed. 1971). Professor Jaffee has suggested that the scope of immunity

7. See id. § 1921(c)(3, 4, 6) (Supp.1976).

granted to public officials should be determined by balancing

" . . . the character and severity of the plaintiff's injury, the existence of alternative remedies, the capacity of a court or jury to evaluate the propriety of the officer's action, and the effect of liability whether of the officer or the treasury on effective administration of law."

L. Jaffee, Judicial Control of Administrative Action 241 (1965); accord, Restatement (Second) of Torts § 895D, Comment f (Tent. Draft No. 19, 1973).

Of course, the Legislature has authority to establish the scope of official immunity. The grant of immunity in section 603 implies that public officials may be held liable for conduct which is in bad faith, malicious, or without reasonable cause. I conclude that this was what the Legislature intended. The balance struck by this section is reasonable and supports the conclusion that the Legislature intended the immunities provided by this section to substitute for the common law immunity. The constitutional policy in favor of providing a remedy, see Pa.Const. art. I, § 11, lends further support to the conclusion that the limited immunity provided in section 603 supplants the common law official immunity. Given the still extant doctrine of sovereign immunity, individuals would have no remedy for tortious conduct by high public officials if common law official immunity applies.

Accordingly, I agree with the majority that the Commonwealth Court order sustaining preliminary objections by the four defendants found to be high public officials should be reversed.

### III

Because I agree with the majority that preliminary objections should not have been sustained as to the four

"high public officials," I also agree the Commonwealth Court should retain jurisdiction of the entire case.

I would reverse the order of the Commonwealth Court in both No. 356 and No. 357, and remand for trial against all defendants.

NIX and MANDERINO, JJ., join in this opinion.