Commonwealth of Pennsylvania, Department of General Services, Plaintiff *v.* Frank Briscoe Co., Inc., and James C. Eastley, Inc., and Steel City Piping Co., and Keystone Engineering Corp., and Westinghouse Elevator Co. and Travelers Indemnity Co., Defendants.

Heard November 18, 1982 and February 28, 1983, before Senior Judge EDWIN H. SATTERTHWAITE.

*Bruce W. Kauffman, Dilworth, Paxson, Kalish & Kauffman*, with him, *Anthony Krzywicki*, Chief Counsel, for plaintiff.

*Kenneth M. Cushman*, with him, *Bruce W. Ficken* and *Kenneth I. Levin, Pepper, Hamilton & Scheetz*, for defendant, Frank Briscoe Co., Inc.

*Theodoree A. Adler, Widoff, Reager, Selkowitz & Adler, P.C.*, and *Joseph K. Pierce, Tive, Hetrick & Pierce, P.C.*, for defendants, James C. Eastley, Inc. and Steel City Piping Co.

*Steven A. Arbittier,* for defendant, Keystone Engineering Corp.

*Mary Jane Forbes,* with her, *David B. Disney* and *Rod J. Pera,* for defendant, Westinghouse Elevator Co.

*R. James Reynolds, Jr.,* with him, *John Havas* and *Larry L. Miller, Pepper, Hamilton & Scheetz,* for defendants, Travelers Indemnity Co.

MEMORANDUM OPINION BY SENIOR JUDGE SATTERTHWAITE, May 3, 1983:

This litigation arises out of the construction of the David L. Lawrence Convention-Exposition Center in Pittsburgh for the Commonwealth of Pennsylvania, acting through the Department of General Services, under contracts aggregating more than $40,000,000. The threshold questions now before the Court involve determination of the subject-matter jurisdiction of the Commonwealth Court to hear and act upon certain aspects. of an action brought therein by the Department, in the name of the Commonwealth, against Frank Briscoe Co., Inc. (hereinafter Briscoe), as well as its performance bond surety and four other prime contractors for the project.

The first four of the eleven counts of the complaint sound in assumpsit, seeking damages for delay in performance and other monetary compensation, in all approximating $10,000,000, for various items of allegedly defective construction and other violations of contract terms, against Briscoe and its surety only. Briscoe has filed an answer placing these claims in issue; it has also asserted its own cross-demand for money damages for alleged contract violations on the part of the Department, amounting to more than $28,000,-

000 in the form of a counterclaim in the instant proceedings in this Court. The Department has filed preliminary objections to the counterclaim, raising the question of the authority of the Commonwealth Court to hear and dispose of any affirmative contract action against an agency of the Commonwealth.

The original jurisdiction of the Commonwealth Court is set forth in Section 761 of the Judicial Code, 42 Pa. C. S. §761, which provides, in presently relevant part:

§761. Original jurisdiction.

(a) *General. rule* — The Commonwealth Court shall have original jurisdiction of all civil actions or proceedings:

(1) Against the Commonwealth government, including any officer thereof, acting in his official capacity, except:

. . . .

(iii) actions on claims in which immunity has been waived pursuant to Chapter 85 (relating to matters affecting government units) or the Act of May 20, 1937 (P.L. 728, No. 193), referred to as the Board of Claims Act;

. . . .

(2) By the Commonwealth government, including any officer thereof, acting in his official capacity, except eminent domain proceedings.

In *Department of Public Welfare v. Ludlow Chemical Laboratories, Inc.*, 22 Pa. Commonwealth Ct. 614, 350 A.2d 208 (1976), under substantially identical prior statutory provisions, a counterclaim by the defendant in an original action in this Court brought by the Department of Public Welfare, which counterclaim allegedly had arisen out of the same contractual relationship as the Department's claim in suit, was held to be beyond the power of the Commonwealth Court

to entertain. Judge ROGERS, in his Opinion for the Court, declared that the question was controlled beyond further discussion by *Commonwealth v. Orsatti, Inc.,* 448 Pa. 72, 292 A.2d 313 (1972).

The rationale in *Orsatti* was that the doctrine of sovereign immunity, being of constitutional dimension, precluded any action against the Commonwealth or its agencies unless, pursuant to Article I, Section 11, of the Pennsylvania Constitution, the Legislature had consented thereto by providing for the manner, courts and cases in which suit might be brought. The Legislature had so provided, in contract cases, by the Act of May 20, 1937, P.L. 728, 72 P.S. §4651-1 *et seq.* (the statute referred to in §761(a)(1)(iii), *supra*), by creating the Board of Arbitration of Claims (now the Board of Claims). Section 4 of that Act, *as amended,* provides that such Board

shall have exclusive jurisdiction to hear and determine all claims against the Commonwealth arising from contracts hereafter entered into with the Commonwealth, when the amount in controversy amounts to $300.00 or more.

In *Orsatti,* the Supreme Court held that, since the waiver of sovereign immunity from contract claims by the Act of 1937 was conditioned upon the claimant's resort to the Board of Claims, the use of such Board's procedure could be the claimant's only remedy under the Constitution. Accordingly, the Commonwealth Court had no power to hear the same, notwithstanding that the claim was in the form of a counterclaim and arose out of the same background contractual relationship which had been the subject of the Commonwealth's original suit.

The *Ludlow* case, *supra,* was affirmed in the Supreme Court by an equally-divided Court: 473 Pa. Pa. 299, 374 A.2d 526 (1977). Justice (later Chief Justice) O'BRIEN filed an Opinion in support of af-

firmance, relying upon the *Orsatti* rationale; he was joined by Justices EAGEN and POMEROY. Justice (now Chief Justice) ROBERTS, joined by Justice NIX, filed an Opinion in support of reversal, disagreeing that the doctrine of sovereign immunity was one of constitutional magnitude, and urging that, in any event, such immunity had been waived by the Act of 1937, so that the question was merely one of whether the Commonwealth Court had jurisdiction to hear the counterclaim. He further reasoned in this connection that, since that Court had been given jurisdiction over "civil actions" (not merely "claims") *by the Commonwealth,* such authority should include power to dispose of the whole controversy and should not be limited merely to the Commonwealth's claim, thus furthering the salutary policy of avoidance of multiplicity of actions. The late Justice MANDERINO filed a separate opinion also in support of reversal.

If *Ludlow* and *Orsatti* be still the law of Pennsylvania, the Department's preliminary objections to Briscoe's counterclaim in the instant case must be sustained. The Supreme Court has not since spoken to the precise issue. Briscoe argues, however, that the subsequent decision in *Mayle v. Pennsylvania Department of Highways,* 479 Pa. 384, 388 A.2d 709 (1978), holding that the doctrine of sovereign immunity was not constitutionally mandated and should be abolished as a matter of judicial policy, permits a re-examination of *Ludlow* and *Orsatti.*

In view of subsequent statutory developments, however, such re-examination would not seem, under principles of *stare decisis,* to allow any different result. The question, while no longer framed in a constitutional context, still involves the identical problem of interpreting the same, or even more restrictive, criteria, albeit now of legislative rather than constitutional stature.

About two months after the decision in *Mayle,* the Legislature enacted the Act of September 28, 1978, P.L. 788, No. 152. Section 1 of Act No. 152, 1 Pa. C. S. §2310, provides:

> Pursuant to section 11 of Article I of the Constitution of Pennsylvania, it is hereby declared to be the intent of the General Assembly that the Commonwealth, and its officials and employes acting within the scope of their duties, shall continue to enjoy sovereign and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity. When the General Assembly specifically waives sovereign immunity, a claim against the Commonwealth and its officials and employes shall be brought *only in such manner and in such courts and in such cases as directed by the provisions of Title 42* (relating to judiciary and judicial procedure) unless otherwise specifically authorized by statute. (Emphasis added.)

Act No. 152 also amended the then-provisions of subsection (c) of Section 761 of the Judicial Code (the Commonwealth Court original jurisdiction section) by the addition of the emphasized concluding clauses in the following:

> (c) *No waiver of sovereign immunity—* The provisions of subsection (a)(1) relating to actions or proceedings against the Commonwealth shall not be construed as a waiver by the Commonwealth of immunity to suit *except as specifically waived pursuant to section 5110 or pursuant to the Act of May 30, 1937 (P.L. 728, No. 193), referred to as the Board of Arbitration of Claims Act.*

It further added certain instances in tort cases of legislative waiver of the Commonwealth's sovereign im-

munity (not presently relevant) as new Sections 5110, *et seq.,* of the Judicial Code.[1]

It seems apparent, then, under Section 1 of Act No. 152, *supra,* that present statutory strictures or conditions upon the assertion of claims against the Commonwealth are, if anything, even more closely dictated than would be the case under Article I, Section 11, of the Constitution standing alone: the Legislature has thereby directed that "a claim against the Commonwealth . . . shall be brought *only* in such manner and in such courts and in such cases as directed . . . ." (emphasis added) by the Judicial Code or other specific statute, such as the Act of 1937 (which, incidentally, was expressly saved from repeal by Section 4(c) of Act No. 152).

Unless and until the Supreme Court overrules *Orsatti, supra,* the rationale therein expressed would seem to dictate that the legislative mandate of Act No. 152 even more certainly precludes a counterclaim against the Commonwealth in contract litigation instituted by the latter under the original jurisdiction powers of the Commonwealth Court. While the considerations looking to and justifying a contrary result, as expressed in the respective Opinions of Justices ROBERTS and MANDERINO in *Ludlow* would seem highly persuasive, nevertheless, this Court is not free "to write a clean slate" so long as *Orsatti* stands as a precedent.

It follows that the preliminary objections filed by the Department to Briscoe's counterclaim in the in-

---

[1] By the JARA Continuation Act of 1980, the Act of October 5, 1980, P.L. 693, Sections 761(c) and 5110 *et seq.,* of the Judicial Code were repealed and the subject matter thereof transferred without significant substantive change to a new Chapter 85, and appropriate editorial and stylistic changes were made to Section 761 so that sub-sub-section (a)(1)(iii) became stated in its present form as quoted earlier in this Opinion.

stant case must be sustained. Such determination, of course, is made without prejudice to the merits of such counterclaim if presented in a proper forum.

A somewhat similar but entirely distinct problem, with a diametrically opposite significance, is presented by Counts X and XI of the Department's complaint. These are asserted against all five defendant-prime contractors; no claims for monetary relief are set forth therein. They involve requests for determination of factual application and judicial enforcement of two sections of the General Conditions of each of the Department's respective contracts with the five defendant prime contractors. The complaint alleges that each of the contractor-defendants other than Briscoe has presented, or is about to present, alleged claims against the Department under the Board of Claims procedures provided for in Section 63.83 of the General Conditions, which section, it is alleged, is inappropriate because each of such claims "is, in its entirety, a claim for costs arising out of delay *caused exclusively by Brisco*" (emphasis added). Accordingly, it is further averred, the respective claimants' exclusive remedy is under Section 63.84 of the General Conditions which provides for disputes or actions between contractors engaged on the project to be disposed of by common law arbitration without the joinder of the Department as a party thereto.

The prayer of Count X of the complaint is that the Court declare that each of the claims is barred against the Department and, further, that the exclusive remedy of each of the claimants is by common law arbitration against Briscoe, only. Count XI prays for a decree of specific performance in equity mandating such submission to arbitration and terminating all claims against the Department. The four contractor-defendants other than Briscoe have each filed answers to the Department's complaint, denying and demanding

proof of many of the allegations therein. Each, in particular, has denied that its pending damage claims have arisen out of delays caused exclusively by Briscoe, and each has averred, to the contrary, that such damages accrued because of the fault of the Department. Three of such other defendants have presented respective motions for summary judgment on the pleadings and affidavits on file pertinent thereto.

The Commonwealth Court has original jurisdiction in general of all civil actions brought by the Commonwealth or its instrumentalities: Section 761(a)(2) of the Judicial Code, *supra.* Accordingly, it unquestionably has the general power to declare rights, status and other legal relationships under the Declaratory Judgments Act: Sections 7531 *et seq.*, of the Judicial Code, 42 Pa. C. S. §7531 *et seq.* Section 7541-(c) thereof provides, however, for certain exceptions to the extremely broad authority to render declaratory judgments; it states, so far as here relevant:

(c) *Exceptions*—Relief shall not be available under this subchapter with respect to any:

. . . .

(2) Proceedings within the exclusive jurisdiction of a tribunal other than a court.

It is upon this exception that the movant-defendants place their reliance in seeking a present determination that the Commonwealth Court has no authority to award the declaratory relief requested. They urge that, notwithstanding that the instant litigation was instituted by an agency of the Commonwealth, the real and only subject matter of the proceeding is the determination of their respective claims *against* that agency. They conclude, therefore, that the Board of Claims under the Act of 1937, as an independent body under the Executive Branch of the Commonwealth and, accordingly, a "tribunal other

than a court," has exclusive jurisdiction to hear and determine all such claims. Therefore, they contend, the exception of §7541(c) applies and judicial power to enter any declarative relief is precluded.

The Department counters with the proposition that, since Section 761(a)(2) confers original jurisdiction upon the Commonwealth Court to hear all civil actions *by* the Commonwealth (excepting only eminent domain cases), that Court necessarily has the power to entertain a declaratory judgment proceeding brought by the Commonwealth agency, and the fact that other forms of relief might be available of, even special statutory remedies, does not oust such general declarative power under the modern version of the Declaratory Judgments Act as restated in the Judicial Code: Section 7541(b).

Furthermore, the Department's argument continues, although §7541(b) excepts from such general power those remedies provided by subsection (c), the relevant wording of subsection (c) is not presently applicable. The Department somehow deduces that, while the words of that subsection "with respect to any proceeding" would obviate a *private party's* declaratory judgment remedy involving a contract claim *against* the Commonwealth in view of the Board of Claims under the Act of 1937, nevertheless, the converse does not apply to preclude declaratory judgments involving the same subject matter but instituted *by the Commonwealth*. Apparently, the rationale for such argument is that private parties are required, as a matter of policy, to exhaust their administrative remedies to permit correction at the non-judicial level of possible bureaucratic errors, whereas such policy has no pertinence to the Commonwealth or its instrumentalities, the remedies of which are stated to be exclusively in the Commonwealth Court and never in the Board of Claims.

The basis for this argument is difficult to comprehend. Subsection (c) of §7541 makes no distinction between declaratory judgment proceedings brought by the Commonwealth or its agencies and those initiated by private parties. The statutory authority for original jurisdiction cases in the Commonwealth Court does not repeal, modify or supplant the jurisdiction of the Board of Claims, even though it might be more convenient to consolidate related actions; considerations of convenience cannot supply power to proceed in the Commonwealth Court which is otherwise lacking: *Piper Aircraft Corp. v. Insurance Co. of North America,* 53 Pa. Commonwealth Ct. 209, 417 A.2d 283 (1980).

To contend that the Commonwealth can never have a remedy before the Board of Claims not only assumes the very point for decision herein, but in fact is incorrect. Section 6 of the Act of 1937, *as amended* by the Act of September 29, 1961, P.L. 1738, 72 P.S. §4651-6, specifically contemplates the Board's determination not only of "claims" against the Commonwealth, but also of "counterclaims," which in the very nature of things could only be by way of affirmative action *by* the Commonwealth, although, of course, the Commonwealth could not be compelled to avail of that procedure before the Board if it chose rather to resort to the courts by assumpsit or otherwise than by declaratory judgment; *Pennsylvania Liquor Control Board v. Rapistan, Inc.,* 472 Pa. 36, 371 A.2d 178 (1976).

The fact that declaratory judgment, equitable or other extraordinary relief could not be granted by the Board of Claims as an ancillary feature of its determination of a claim against the Commonwealth does not militate against its exclusive jurisdiction of such claims or create jurisdiction in the Commonwealth Court solely by reason of that deficiency of remedy: *Vespaziani v. Department of Revenue,* 40 Pa. Com-

monwealth Ct. 54, 396 A.2d 489 (1979) (equity for specific performance of contract, denied); *Clark v. Pennsylvania State Police*, 496 Pa. 310, 436 A.2d 1383 (1981) (equity for specific performance of contract, denied); *Emergency Medical Services Council of Northwestern Pennsylvania v. Department of Health*, Pa. , 451 A.2d 206 (1982) (equity to enjoin termination of contract, denied); *Modjeski and Masters v. Larson*, 50 Pa. Commonwealth Ct. 215, 412 A. 2d 680 (1980) (mandamus to enforce contract, denied); *Myers v. Department of Revenue*, 55 Pa. Commonwealth Ct. 509, 423 A.2d 1101 (1980) (declaratory judgment to test constitutionality of tax statute, denied).

The very existence of §7541(c) in the current law of declaratory judgments, and the present availability of Board of Claims procedures, completely obviate *Commonwealth v. Nelson-Pedley Construction Co.*, 303 Pa. 174, 154 A. 383 (1931), and its companion decisions, as precedents upon which the Department may justifiably rely herein. In 1931, when those cases were decided, the present problem could not have arisen; the Board of Claims as a tribunal and its exclusive procedures were not created until 1937.

It would seem beyond any realistic question that the determinative issue posed by the instant proceedings is one which is specifically and solely within the province of the Board of Claims under the exact words of the statute of 1937. Despite the fact that the Department is the moving party-plaintiff, it seeks no affirmative relief in the nature of a claim for damages or other similar award against any of the contractor-defendants other than Briscoe. To the contrary, as to them, the Department's only objective is the negative one of an adjudication that it is not liable *on their claims against it,* plus an incidental corollary founded upon that same conclusion that they should

proceed therefor against Briscoe alone and by way of common law arbitration. Inevitably, if this Court takes jurisdiction of this phase of the litigation and undertakes to decide whether to grant such relief, the Court must necessarily "hear and determine" the contractors' claims against the Department as an agency of the Commonwealth and decide whether the Commonwealth is legally responsible therefor, all of which is the very subject matter which the Act of 1937 has given exclusively to the Board of Claims and which is accordingly beyond the power of any court to entertain by way of declaratory judgment proceedings under §7541(c).

Such considerations make it almost self-evident that the Department's resort to the equitable powers of the Court by Count XI of the complaint is also without sound legal basis. The Department quite apparently has a full and adequate remedy at law by way of affirmative defense to the defendant-contractors' Board of Claims proceedings, procedures which its own form of contract conditions specifically provided for.

In the context of the within-complicated and multi-faceted proceedings involving intricate and technical construction contract problems of unusual substance and interrelationships, it would seem highly desirable to sort out the same, if possible, in one integrated proceeding before one tribunal, preferably one having, as does the Board of Claims, the specialized expertise and personnel particularly qualified to pass upon such matters, with resort to the judicial process, if at all, by way of appeal after the ground work had been done and the real issues had been isolated, brought into well-defined focus and decided at the administrative agency level. *Havertown Savings and Loan Association v. Commonwealth*, 3 Pa. Commonwealth Ct. 266 (1971). In short, the policy considerations which the Depart-

ment urges to require opportunity for administrative correction of errors, suggested to be applicable only where an individual claimant is seeking relief, would logically seem equally applicable to affirmative defenses or cross-proceedings by the Commonwealth necessarily involving the exact same types of subject matter of a highly technical and specialized nature.

One final matter requires mention. Pa. R.C.P. No. 1035(b), relating to the disposition of motions for summary judgments, provides, in part:

> The judgment sought shall be rendered if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law . . . .

*Compare Pennsylvania Public Utility Commission Bar Association v. Thornburgh,* 62 Pa. Commonwealth Ct. 88, 434 A.2d 1327 (1982).

In the instant proceedings, the pleadings and other documentation of record admittedly do not permit present resolution of one fundamental issue basic to the ultimate success of the Department's position respecting its liability to the respective contractor-defendants, *i.e.,* whether the latters' claims, admittedly to be asserted against the Department, were attributable to delays caused by the Department, as they contend, or by reason of delays which were the sole fault of Briscoe, as the Department asserts.

This circumstance, however, does not preclude the entry of summary judgment herein. The very presence and unquestioned existence of such dispute as to the Commonwealth's liability is itself a material fact which demonstrates under the foregoing discussion that the Board of Claims has exclusive jurisdiction

162

and that the Commonwealth Court has no power to supersede that agency in the premises.

The respective motions for summary judgment of the movant-defendants should be granted; the within proceedings insofar as pertaining to them (Counts X and XI) should be dismissed for lack of power or subject-matter jurisdiction in this Court to entertain the same. Such disposition is made, of course, without prejudice to the merits of the respective claims of the defendants, or any determination of the identity of a party, or parties, if any, which might be liable therefor. While no motion for summary judgment has been filed by defendant-contractor Keystone Engineering Corp, a like judgment should be entered in its favor of the Court's own motion since the same lack of power in the Court to act on Counts X and XI of the complaint is equally applicable to its situation.

ORDER

AND Now, this 3rd day of May, 1983, the preliminary objections of Plaintiff, Commonwealth of Pennsylvania, Department of General Services, to the counterclaim of Frank Briscoe Co., Inc., Defendant, are hereby sustained and said counterclaim is hereby dismissed, without prejudice to the merits of said counterclaim if asserted in a proper forum.

It is hereby declared, pursuant to Section 702(b) of the Judicial Code, 42 Pa. C. S. §702(b), that this Order involves a controlling question of law as to which there is substantial ground for differences of opinion and that an immediate appeal from the Order may materially advance the ultimate termination of the matter.

ORDER

AND Now, this 3rd day of May, 1983, the respective motions of Defendants James C. Eastley, Inc., Steel

City Piping Co., and Westinghouse Elevator Co. for summary judgment, and a similar motion for summary judgment on behalf of Defendant Keystone Engineering Corp. entered by the Court of its own motion, are hereby respectively granted, and the within proceedings insofar as pertaining to each of said Defendants are hereby dismissed for a lack of subject-matter jurisdiction of the Court, without prejudice to the merits of the respective claims of any of said Defendants or any determination of the identity of a party, or parties, if any, which may be liable therefor.

It is hereby declared, pursuant to Section 702(b) of the Judicial Code, 42 Pa. C. S. §702(b), that this Order involves a controlling question of law as to which there is substantial ground for differences of opinion and that an immediate appeal from the Order may materially advance the ultimate termination of the matter.